IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

KORRIE BENEDICT, etc,

                Plaintiff,                Case No. 3:04 CV 7763

-vs-

                                            <u>MEMORANDUM   OPINION</u>

CENTRAL CATHOLIC HIGH SCHOOL,
et al.,

                Defendant.

KATZ, J.

This matter is before the Court on the parties' cross motions for summary judgment (Doc. 30, 31).

**I. Background**

Plaintiffs Timothy Benedict and his mother, Korrie Benedict, filed this action against Central Catholic High School (CCHS), CCHS President Father Gregory Hite, and CCHS Assistant Principal R.J. Euckert. The complaint alleges disability discrimination under section 504 of the Rehabilitation Act, 29 U.S.C. § 794, as well as under Ohio Rev. Code § 4112.02(G). The complaint also alleges violation of procedural due process under the 14th Amendment to the United States Constitution, and of 34 C.F.R. § 104.36.

Timothy Benedict qualifies as a disabled person under 34 C.F.R. § 104 (j)(2)(B), having a specific learning disability. Prior to beginning at CCHS, Timothy attended Mary Immaculate, where he studied under an Individual Education Plan (IEP). An IEP is a customized education

plan designed to meet the needs of disabled students and provide an appropriate education in accordance with 34 C.F.R. § 104.33.

To address the learning needs of disabled students, CCHS maintains multiple special education programs. One such program is called a Student Minor Adjustment Plan (SMAP). A SMAP is an individualized plan created to outline minor changes necessary to the disabled student's educational plan. Moreover, a SMAP functions in part as an IEP. A second, more intensive program offered by CCHS is the Learning Disability (LD) Program. The LD program is generally administered in conjunction with an IEP, and includes accommodations such as tutors, small group instruction, and an LD resource room dedicated to assisting LD students. Moreover, while CCHS is a private school, the LD program receives federal financial assistance from the U.S. Department of Education.

Timothy began attending CCHS as a Freshman during the 2002-2003 school year. During Timothy's first quarter at CCHS, a SMAP was developed to address his learning disability. However, not all of the SMAP suggestions were implemented, and Timothy struggled through his first semester, receiving failing grades in science and religion. Then in January of 2003, CCHS implemented an annual IEP for Timothy, and also began giving him the more intensive educational support offered by the LD program. At the end of his second semester, Timothy passed all classes except science.

The annual IEP developed for Timothy remained in effect through February of his second year at CCHS (2003-2004 school year). However, when it was time to update the IEP in March 2004, the Benedicts and CCHS were unable to reach an agreement on the details. Despite the

2

difficulty in implementing a new plan, however, Timothy passed every class during the 2003-2004 school year, and he was able to make up the religion classes he had previously failed.

Amidst academic improvements, however, Timothy began experiencing problems unrelated to his classes. Specifically, on or about December 19, 2003 – prior to the March IEP negotiations – Timothy admitted that he accepted marijuana from CCHS student Fred Brown, after Brown had pressured him to help sell the drugs. A couple of hours after taking the marijuana, however, Timothy decided he made a mistake and claims to have thrown away the drugs. Then, when Timothy began receiving threats from Brown to produce money for the marijuana, Timothy went to his mother, Ms. Benedict, for help. In January 2004, Ms. Benedict informed CCHS Dean Dennis Bolbach of the threats made in relation to the marijuana, at which point Dean Bolbach initiated disciplinary proceedings against both students for violation of CCHS drug policy. The other students involved in the incident were expelled. Timothy received an immediate two day suspension and, after a hearing before a disciplinary board, was recommended for expulsion pursuant to CCHS drug policy. Upon appeal to CCHS President Father Gregory Hite, however, Timothy was allowed to remain at CCHS "until the end of the [2003-2004] school year." At the end of Timothy's sophomore year, Ms. Benedict executed a voluntary withdrawal form and did not attempt to re-enroll him for the 2004-2005 year.

Plaintiffs instituted this action on December 13, 2004, alleging disability discrimination under section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and under Ohio Rev. Code § 4112.02(G). Plaintiffs also allege violation of procedural due process under the 14th Amendment to the United States Constitution, and under 34 C.F.R. § 104.36. The parties filed cross-motions

3

for summary judgment in November 2006. For the reasons stated herein, Plaintiffs' motion for summary judgment is denied, and Defendants' motion for summary judgment is granted.

**II. Summary Judgment**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing

4

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**III. Discussion**

The Court addresses Plaintiff's disability discrimination claim first, and then issues relating to due process under the Rehabilitation Act and the 14th Amendment to the U.S. Constitution.

**A. Disability Discrimination Claim**

Plaintiffs first allege that CCHS discriminated against Timothy on the basis of his disability in violation of section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and in violation of

Ohio Rev. Code § 4112.02(G). Because the Ohio law is intended to mirror the Rehabilitation Act, both claims will be analyzed under Rehabilitation Act standards.

Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Most of the cases relating to disability discrimination occur in the context of employment issues. However, the decisional principals of the disability discrimination in employment cases are analogous to those in education cases, and much of the support for education cases will come from employment cases. *See McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 460 (6th Cir. 1997) (explaining the similarity between disability discrimination in employment cases and in education cases).

Plaintiffs claim that when an agreement could not be reached regarding an update to Timothy's annual IEP, CCHS discriminated against Timothy by refusing to accommodate his learning disability. Furthermore, Plaintiffs claim that when they insisted on accommodation, CCHS discriminated against Timothy by precluding him from re-enrolling for his junior year. Conversely, Defendants claim that any action taken with regard to Timothy's enrollment at CCHS resulted from his violation of the school's drug policy, and that Plaintiffs voluntarily withdrew Timothy and did not seek re-enrollment. Plaintiffs claim that Defendants' reference to the drug policy violation is a pretext for discrimination.

This case is properly analyzed under the *McDonnell Douglas* burden shifting analysis established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. *See Bradshaw v. Goodyear Tire and Rubber Co.*, 485 F. Supp. 2d 821, 826-27 (N.D. Ohio 2007)

6

(outlining the *McDonnell Douglas* burden shifting analysis). Under *McDonnell Douglas*, a plaintiff must first allege facts to establish a prima facie case of disability discrimination. *Id*. (citing *McDonnell Douglas* 411 U.S. 792, 802). Once a plaintiff has made such a showing, "the burden shifts to the [defendant] to articulate a legitimate, non-discriminatory reason for its decision." *Id*. Finally, if a defendant meets its burden, "the burden shifts back to the plaintiff to prove that the legitimate reasons . . . were not its true reasons, but were a pretext for discrimination." *Bradshaw*, 485 F. Supp. 2d 821, 827 (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1095 (6th Cir. 1996); *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990)).

First, Plaintiffs must establish a prima facie case of discrimination under section 504 of the Rehabilitation Act. To do so, Plaintiffs must allege (1) either that Timothy was or was perceived to be handicapped within the definitions of the Rehabilitation Act; (2) that he was an otherwise qualified handicapped individual; (3) that he was discriminated against on the basis of his qualifying disability; (4) and that the defendant receives federal funds. *McPherson*, 119 F.3d 453, 460 (citing *Andrews v. State of Ohio*, 104 F.3d 803, 807 (6th Cir. 1997)).

The parties do not dispute that the identification of Timothy Benedict's specific learning disability qualifies him as a disabled person under section 504 of the Rehabilitation Act. The parties agree that Timothy is an "otherwise qualified" handicapped person, and that CCHS's LD program is the recipient of federal funds. Plaintiffs have shown that Defendants were reluctant or opposed to accommodating his learning disability when they could not reach an agreement on re-enrollment accommodation at CCHS when Plaintiffs insisted on accommodation with regard to the 2003-04 and 2004-05 school years. Therefore, Plaintiffs have established a prima facie case of

7

discrimination under the Rehabilitation Act, and have met their initial burden under *McDonnell Douglas*.

Next, Defendants must articulate a legitimate, non-discriminatory reason for their decision. In this case, Defendants assert that any action taken against Timothy resulted from his admitted violation of CCHS's published drug policy. CCHS's policy states in pertinent part that

> Students at Central Catholic High School shall not possess . . . illegal drugs, prescribed drugs, unprescribed drugs, look-alike drugs, narcotics, or any mind-altering substance while on school property . . . . The following consequences will apply when a direct policy violation has occurred . . . Students found in violation may be subject to expulsion . . . A disciplinary board hearing will be scheduled as quickly as possible.

In this case, Timothy admitted to possessing marijuana while on CCHS property. Consequently, Defendants initiated a disciplinary hearing, and Timothy was recommended for expulsion in accordance with CCHS's drug policy. Furthermore, Defendants point out that the other students involved in this incident were expelled for violating the drug policy. Defendants have therefore articulated a legitimate, non-discriminatory reason for action taken against Timothy, and have thus satisfied their burden under *McDonnell Douglas*.

Finally, a plaintiff must show that the defendant's explanation was not the true reason for its actions, but that it was instead a pretext for discrimination. "Demonstrating pretext is the [plaintiffs'] burden. To satisfy his burden, [plaintiffs] must show by a preponderance of the evidence 'either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate his discharge.'" *Jones v. Potter*, 2007 U.S. Dist. LEXIS 14454, at \*\*22 (6th Cir. June 20, 2007) (citing *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

First, Plaintiffs do not argue that Defendants' proffered non-discriminatory reason has no basis in fact. Indeed, plaintiffs acknowledge that Timothy possessed marijuana while on CCHS property. Consequently, plaintiffs have failed to satisfy the first method of showing pretext.

Next, plaintiffs do not argue that the proffered reasons in this case were insufficient. In fact, CCHS's policy clearly states that students who have possessed marijuana on school property will be subject to expulsion. Therefore, plaintiffs have failed to satisfy the last method of showing pretext.

One method for showing pretext remains. Plaintiffs argue that Defendants had been trying to get rid of Timothy because of his disability since he started at CCHS. Specifically, plaintiffs assert that Defendant R.J. Euckert continually claimed that CCHS did not have the programs necessary to meet Timothy's needs as a learning disabled student, and that Euckert continually tried to convince plaintiffs they should go to a different school. *See* Euckert Dep. 65-66, 73-74; Kirby Dep. 23, 25-26; Korrie Benedict Dep. 92-93. Moreover, Plaintiffs argue that Defendants have engaged in a similar pattern and practice of discrimination against other learning disabled students. Specifically, plaintiffs argue that Euckert has pressured other CCHS parents to withdraw their learning disabled students after telling them that CCHS does not have the resources they need. Thus, Plaintiffs argue that Defendants were trying to get rid of Timothy all along, that refusing to update Timothy's IEP was a convenient method of doing so, and that disciplinary expulsion was simply a pretextual excuse for discrimination.

Defendants respond that similarly situated students – the other two students involved in the incident – were expelled for the same conduct as Timothy. Furthermore, Defendants urge that

9

Plaintiffs voluntarily withdrew Timothy from enrollment, and never tried to re-enroll him the next year.

"Demonstrating pretext is the [plaintiffs'] burden." *Jones v. Potter*, 2007 U.S. Dist. LEXIS 14454, at \*\*22. In this case, plaintiffs have failed to meet this burden. While plaintiffs contend that Defendant Euckert continually pressured them to withdraw Timothy, they withdrew him voluntarily and never attempted to re-enroll him. Moreover, plaintiffs simply cannot show that the legitimate recommendation for Timothy's expulsion would not have precluded him from re-enrolling at CCHS, regardless of an inability of the parties to agree on renewal terms for Timothy's IEP. In short, plaintiffs have not met the heavy burden of showing that Defendant's legitimate expulsion of Timothy was a pretext for discrimination. As such, this Court finds that Defendants did not discriminate against plaintiffs in violation of section 504 of the Rehabilitation Act, or in violation of Ohio Rev. Code § 4112.02(G).

**B. Due Process Claim**

Plaintiffs allege violation of procedural due process under the 14th Amendment to the United States Constitution, as well as under 34 C.F.R. § 104.36. The Court assumes *in arguendo* for the sake of this opinion, and the parties do not dispute, that CCHS is subject to due process requirements although it is not a state institution and although the federal funding it has been shown to receive is not related to its disciplinary procedures, but rather to the unrelated LD program.

Plaintiffs claim that the procedures used by the CCHS disciplinary board in conducting Timothy's disciplinary hearing unconstitutionally denied the assistance of an attorney and failed to provide for an impartial hearing. Plaintiffs point to the CCHS disciplinary board guidelines as

evidence. The stated purpose of the guidelines is to govern determination of "penalties appropriate to serious student misbehavior." Moreover, the guidelines instruct that "the purpose of a hearing is not to determine guilt or innocence; guilt or innocence is already established by teachers or deans beforehand." Furthermore, "the presence of lawyers or other professional advocates is inappropriate and not permitted without the express written permission of the Principal." Plaintiffs argue that such policies violate due process under the 14th Amendment and under 34 C.F.R. § 104.36.

Plaintiffs assert that a predetermination of guilt or innocence negates impartiality. This argument is unpersuasive. The record indicates that Timothy clearly <u>admitted</u> his guilt. Thus, the disciplinary hearing in this case had nothing to do with guilt or innocence. Instead, the disciplinary hearing concerned what action should be taken by CCHS in response to Timothy's admission of guilt. Because the record shows that there was no predetermination of what action should be taken against Timothy, there is no issue as to whether Timothy received an impartial hearing. Consequently, the only issue of due process is whether Timothy should have been allowed an attorney at the hearing.

      **1.     Due Process under 34 C.F.R. § 104.36**

34 C.F.R. § 104.36 enumerates procedural safeguards required "with respect to actions regarding the identification, evaluation, or educational placement of persons who, because of handicap, need or are believed to need special instruction or related services . . . ." *Id.* The safeguards required by this section include "an impartial hearing with opportunity for participation by the person's parents or guardian and representation by counsel . . . ." *Id.* Notwithstanding these requirements, however, Defendants did not violate the regulation.

11

The plain language of 34 C.F.R. § 104.36 suggests that the regulation governs the necessary safeguards for disabled students when the action at issue concerns educational placement *on the basis of their disability*. The disciplinary hearing at issue in this case had nothing to do with Timothy's needs as a disabled student. Instead, the disciplinary hearing in this case addressed whether Timothy should be expelled for possessing marijuana on school property. As such, a due process analysis under 34 C.F.R. § 104.36 is not applicable to this case.

### 2. Due Process Under the 14th Amendment

The test for the amount of procedural process due under the Fourteenth Amendment "requires consideration of the cost of the additional procedure sought, the risk of error if it is withheld, and the consequences of error to the person seeking the procedure." *Osteen v. Henley*, 13 F.3d 221, 226 (7th Cir. 1993) (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). The issue of whether a student is entitled to an attorney during a disciplinary proceeding has been examined before. In *Osteen v. Henley*, 13 F.3d 221 (7th Cir. 1976), the Seventh Circuit examined whether a school's refusal to allow a lawyer advocate on behalf of a university student at his expulsion hearing violated Fourteenth Amendment procedural due process. The *Osteen* court held that "when [considering] all the factors bearing on [the student's] claim to a right of counsel, we conclude that the Constitution did not confer such a right on him. We doubt that it does in any student disciplinary proceeding." *Id*. at 226.

While *Osteen* militates against allowing attorney participation in student disciplinary proceedings, it only does so to the extent that the attorney is actively advocating, objecting, and examining witnesses. The *Osteen* court expressly declined to decide whether the Fourteenth Amendment requires the right to have an attorney present for purposes of consultation and advice.

12

*Osteen*, 13 F.3d 221, 225. The *Osteen* court noted that the First Circuit held that the Fourteenth Amendment requires assistance of counsel at such hearings, "though over a dissent which points out that the Supreme Court had rejected the same argument in the parallel context of prison disciplinary proceedings." *Osteen*, 13 F.3d 221, 225 (citing *Gabrilowitz v. Newman*, 582 F.2d 100, 105-07 (1st Cir. 1978)).

While it is undecided whether the Fourteenth Amendment confers on students the right to consult an attorney during a disciplinary proceeding, this Court finds it unnecessary to reach that broad constitutional question. First, the parties' briefs in this case make no reference to any of the above arguments concerning the issue. Second, Plaintiffs have not shown that there is a pending criminal case against Timothy that would heighten his interest in having an attorney present. *See Gabrilowitz*, supra (granting student the right to have counsel at a university disciplinary reason, based largely on the fact that the student was concurrently defending himself in a criminal proceeding arising from the same underlying incident). Third, the Sixth Circuit has not endorsed the notion that students have a right to counsel at disciplinary hearings. In *U.S. v. Miami University*, in declining to apply First Amendment disclosure requirements to Universities regarding their disciplinary proceedings against students, the court noted that "[f]or many reasons, student disciplinary proceedings do not 'afford the student the opportunity to secure counsel'" or to call witnesses. 294 F.3d 797, 821-23 (6th Cir. 2002) (citing *Goss v. Lopez*, 419 U.S. 565, 583 (1975)). Finally, it is unclear from Plaintiffs' briefs whether they made any attempt at all to have an attorney present at Timothy's disciplinary proceeding. Instead, Plaintiffs simply claim that CCHS's policy of prohibiting attorneys denied them an abstract right that they have made no

13

effort to show exists. As such, this Court declines to reach a decision on the issue, and finds that Defendants did not violate Plaintiffs' Fourteenth Amendment right to procedural due process.

### IV. Conclusion

For the reasons stated herein, Plaintiffs' motion for summary judgment is hereby denied (Doc. 31), and Defendants' motion for summary judgment is hereby granted (Doc. 30).

IT IS SO ORDERED.

             s/ *David A. Katz*
             DAVID A. KATZ
             U. S. DISTRICT JUDGE